STATE OF MISSOURI, RESPONDENT, v. EDWARD F. BYRNES, APPELLANT.
177 S. W. (2d) 909.

Kansas City Court of Appeals. January 31, 1944.

222

*William J. Hough, John W. Joynt* and *Edgar J. Keating* for appellant.

*C. J. Quimby, W. O. Jackson,* Assistant Attorney-General, and *William L. Vandeventer,* Special Assistant Attorney General, for respondent.

SPERRY, C.—The State, by indictment, charged Edward F. Byrnes, defendant, with the misdemeanor of soliciting a bribe. Trial to a jury resulted in a verdict of guilty.

The undisputed facts are that defendant was a member of the House of Representatives of the Sixty-first General Assembly; that he was a member of the committee on insurance thereof; and that there was referred to said committee for its consideration certain proposed legislation known as Senate Amendment to Committee Substitute for Senate Bills Numbers 80 and 129, as amended.

The kernel of the indictment is the charge that, on the — day of June, 1941, at the County of Cole, in the State of Missouri, while said bill was pending in the House of Representatives and in said committee, defendant did propose and offer to receive as a bribe from one Howard C. Harris one suit of clothes to induce defendant to cast his vote, as a member of said committee, in favor of said bill, and to secure the approval of said bill by said committee.

To sustain the charge the State offered in evidence the bill above mentioned and the testimony of Harris. Harris testified, to the effect, that he was in Jefferson City on June 8, 1941, and was interested in the enactment of said bill into law; that defendant wanted to know ". . . how much it would be worth to me if he got the bill out of the House Committee;" that he told defendant that: "I didn't have that kind of money;" that defendant stated: "You might have a difficult time getting that bill out of the committee unless there is some money raised, because it looks like the money is being spent for Robinson to keep that bill in the committee;" and that witness answered: "If Robinson keeps it in there God knows he has got more nerve than I thought he had."

Harris further testified that he again saw defendant in Jefferson City on June 25, 1941. Witness related the following conversation as having occurred on that occasion: ". . . asked me if I would give him enough money to get a suit of clothes, and if I did that he would guarantee to get that bill out of the committee for me"; that he told defendant: "You know I can't do anything like that"; that defendant said: "Well, if you don't want to give me the money will you give me a suit of clothes, and I will get that bill out of the committee"; and that witness refused to do as requested.

Defendant denied ever having had the above-mentioned conversations with Harris.

Complaint is made that error was committed because the trial court overruled defendant's motion to quash the indictment. The

motion was based on allegations to the effect that an assistant attorney-general was in the grand jury room during the time the jury was hearing evidence and deliberating on the indictment; that said attorney took, in shorthand, the testimony of witnesses; and that said shorthand notes, covering said evidence, were read by the attorney to the grand jury, and to members thereof.

Defendant was the proponent of the motion and the burden was on him to prove the allegations of fact upon which said motion was based. From an examination of the abstract of the record containing the evidence offered in support of the motion, it appears that the grand jury which returned the indictment in the instant case also heard evidence in connection with, and considered, many other criminal charges and cases involving parties other than defendant and with which defendant had no connection. The record fails to disclose that the conduct here complained of occurred while the jury was hearing evidence, or engaged in deliberation, on the charges which culminated in the instant indictment. It was not error for the court to have overruled the motion to quash the indictment.

Error is urged because of the overruling of defendant's demurrer to the indictment on the grounds that same fails to charge defendant with the commission of a crime. The Constitution of Missouri, Article 4, Section 15, provides that a member of the Legislature who fails to faithfully perform the duties of his office shall be adjudged guilty of perjury. It is defendant's contention that a member of the Legislature could not have been charged at common law with the crimes of soliciting a bribe, as is done by the indictment in this case, but could only have been charged with the commission of the crime of perjury, under the above constitutional provision. Defendant's position in this respect is untenable. This court has held that soliciting a bribe was a misdemeanor at common law and that a member of the State Senate might be so charged under the common law. [State v. Sullivan, 110 Mo. App. 75.] It is true that the court did not there discuss the precise question here raised; but the above constitutional provision was then effective and it is somewhat significant that it was not there suggested that the Constitution provides an exclusive remedy for the suppression of this kind of offense. The solicitation, acceptance, or offering of a bribe is not a subject mentioned by or included within the language of the constitutional provision above mentioned. Solicitation of a bribe could not be a violation of the constitutional injunction of faithful performance of duty there required. The solicitation or acceptance of a bribe might, or might not, lead to or induce a nonfeasance or misfeasance of duty. Therefore, the act of solicitation or acceptance of a bribe must necessarily occur, in point of time, prior to the doing or refraining from the doing of the thing for which a bribe is sought or accepted. The doing of some act, or the failure to do something, is the offense denounced by the above

constitutional language. That is the logical conclusion reached by application of the following rule of law, stated in 11 C. J. S. 859, to-wit: The crime of solicitation of a bribe is complete when the solicitation is made, even if no money is paid and whether or not the solicitor is, in fact, influenced or induced to act.

Defendant says that the court should have directed a verdict of acquittal because the evidence upon which the State relied for conviction came from a single witness who was materially impeached and whose testimony was uncorroborated. In support of this contention defendant cites State v. Sullivan, 110 Mo. App. 75, l. c. 79, and Walsh v. The People, 65 Ill. 58. In the Sullivan case the court held that the testimony which tended to support the charge was corroborated; but the court did not say that corroboration was essential in order to sustain a conviction. In the Walsh case, *supra,* the Illinois Court held, in effect, that the testimony of the single witness upon whose testimony the conviction rested was unworthy of belief in view of the fact that the witness' testimony was self contradictory and that he was shown to have made statements to divers persons, prior to the trial, which tended to disclose his extreme bias and prejudice. It is noted, in the case at bar, that Harris' reputation was not attacked nor was his testimony self contradictory. It is true that certain witnesses gave testimony concerning a statement claimed to have been made by him which, if made, would indicate that he was desirous that defendant should be convicted; but he was not impeached anything like as completely as was the prosecuting witness in Walsh v. The People, *supra.* It has been said that, in prosecutions for soliciting, giving, or taking bribes, and for conspiracy to commit such crimes, the testimony of a *co-conspirator,* or of an *accomplice,* must be corroborated (11 C. J. S. 18; People v. O'Neil, 109 N. Y. 251, 16 N. E. 68); but this is not that kind of case, 16 C. J. 679. In a prosecution of this kind the uncorroborated testimony of a single witness has been held sufficient to sustain a conviction. [State v. Morrison, 27 Pac. (2d) 1065, 175 Wash. 656.] In the state of the record in this case the weight of the evidence was for the jury, and the court committed no error in submitting the case. [16 C. J. S. 674; State v. Morrison, *supra.*] Rarely, if ever, does an appellate court in this State set aside judgments because of the weight of the evidence. [State v. Decker, 326 Mo. 946, l. c. 961.]

The court, at the request of the State, gave Instructions S-1, which is as follows:

"The court instructs the jury that it was the official duty of Edward F. Byrnes as a member of the House of Representatives of the Sixty-first General Assembly of the State of Missouri, to give to said Senate Amendment to Committee Substitute for Senate Bills Numbers 80 and 129, his impartial consideration, judgment and decision as to

whether said Senate Amendment to Committee Substitute for Senate Bills Numbers 80 and 129 should be passed by the House of Representatives of the Sixty-first General Assembly.''

The court also gave Instruction S-3,. it being the State's main instruction, wherein the jury was instructed ''that if you find and believe from the evidence, . . . that it was the duty of the said Edward F. Byrnes . . . to give to said Senate Amendment to Committee Substitute for Senate Bills Numbers 80 and 129, his impartial consideration, judgment, and decision as to whether . . . (same) should be passed by the Insurance Committee . . . and if you further find . . . that . . . on or about the 26 day of June, 1941, the said Edward F. Byrnes . . . did . . . propose to and offer to receive a bribe . . . ''

Conceding, for the purpose of this discussion, that the proposition of law declared in Instruction S-1 is a correct abstract declaration of the law, it was error to give it if for no other reason than that it is but an abstract declaration of law without any attempt made to apply it to the facts in evidence. [State v. Mininger, 306 Mo. 675, l. c. 695; State v. Cooper, 32 S. W. (2d) 1098.] When an instruction has been given ''. . . The jury must have considered that said instruction meant something and was the law as applied to the evidence.'' [State v. Farmer, 111 S. W. (2d) 76, l. c. 80.] In attempting to apply such an instruction to the evidence in the case, without direction from the court as to how same shall be applied, it is likely that a jury of laymen will err. Such instructions are condemned because ''. . . No one can know how a jury would apply said abstract propositions of law to the case at hand . . . tends to broaden the issues, confuse the jury, and to invite error, . . . '' [Schipper v. Brashear Truck Company (Mo.), 132 S. W. (2d) 993, l. c. 995, 996.]

Under all of the authorities it must be held that the giving of said instruction was error.

The State contends that, at most, it was harmless error. Judge GANTT said: ''Error is presumptively harmful and it devolves upon the party who commits it to show that it could not *possibly* have resulted in injury. Especially is this true where the *life* or *liberty* of the citizen is at stake.'' (Italics ours.) [State v. Shipley, 174 Mo. 512, l. c. 516.] In an opinion wherein the author, Judge WALKER, stated that it was difficult to see how the defendant could have been injured by an erroneous instruction there considered the Supreme Court, *en banc*, declared the rule to be: ''. . . *in the absence of a satisfactory showing that an erroneous instruction is harmless,* it will be presumed to be prejudicial to the party against whom the error is committed.'' (Italics ours.) [State v. Saunders, 232 S. W. 973, l. c. 977.] The true rule in regard. to erroneous instructions is: The error is presumed to be prejudicial and reversal must follow. as a

matter of course unless that presumption is positively overcome in the mind of the court after a thorough consideration of the entire record; and if, after consideration of the entire record, there remains a substantial doubt as to whether or not the error was injurious then that doubt should be resolved in favor of the party against whom the error was committed. Such a rule is but a summation of the various pronouncements of the courts on the subject. It is a rule of logic that inevitably flows from the American concept of the administration of law and justice.

The State contends that the declaration of law above mentioned is correct and must be inferred from the provisions of Article 4, Section 15, of the Constitution of Missouri, and that it could not have harmed defendant. Defendant was not on trial for a violation of the provisions of the above cited section of the constitution. Indeed, it is the State's contention here, and we have so held, that the offense charged is one under the common law and that the crime of soliciting a bribe is not embraced within the meaning of the terms of the cited portion of the constitution.

The crime of soliciting a bribe is complete when the bribe is sought, which is before the legislator can or does act, either mentally or physically, with reference to doing the thing for which he sought the bribe. Neither the fact that the person from whom the bribe was sought failed to seriously consider giving it, nor the fact that the solicitor, thereafter, failed to act in the manner indicated by the solicitation, constitutes any defense to the crime of soliciting or offering a bribe, although such facts might be pertinent, together with others, on the question of intent. The crime charged in the indictment is not the same crime that is denounced in the constitution. The two are essentially and fundamentally different.

The instruction could have influenced the jury to believe that the court had in mind that defendant had utterly failed to perform his duties with reference to the bill by having failed, for any reason, to give it his impartial consideration and judgment. Defendant was not charged with the commission of any such offense, as is hinted at in the instruction, and the evidence thereon was wholly inconclusive. Nevertheless, it may be inferred, from this instruction, that perhaps defendant was guilty of some reprehensible conduct other than that of which he was charged, and that the jury should consider such conduct, together with evidence relating to the crime charged, in arriving at its verdict. It can reasonably be said that it served to bring to the attention of the jury the fact that there was something, undefined and indefinite which, in some way, had a bearing on the manner in which they should view the evidence pertinent to the offense of solicitation of a bribe.

In a final analysis of the charge contained in the indictment and of the evidence in support thereof the State's case against defendant

depended on whether or not a certain conversation occurred between Harris and defendant. The issue was simple. This conversation, if it occurred, was evidence of commission of the crime ·of solicitation of a bribe. If it was ever a crime at common law for a member of the Legislature to fail to fairly and impartially perform his duty, such an offense was abolished by our constitution and, by Article 4, Section 15 thereof a violation of his oath of office there prescribed was declared to constitute the crime of perjury. By Instructions S-1, emphasized and restated in a different way in Instruction S-3, the court brought into the case an entirely different and distinct crime, that of perjury, denounced by the constitution. The court told the jury, *in legal effect*, by Instruction S-1, that it was defendant's duty not to commit perjury; and it told the jury, by Instruction S-3, that if they found from the evidence that defendant was guilty of perjury, and that if they further found that the last ·conversation mentioned in evidence occurred, then they should convict him of the crime charged. It was prejudicial to the defendant for the court to thus cast a reflection on defendant's integrity and standing as a witness and it was error to direct the jury that it might or should determine defendant's guilt or innocence of another and *wholly unrelated offense,* the commission of which was not charged, in connection with its consideration of the evidence touching the crime of soliciting a bribe.

These instructions constituted an argumentative comment on the evidence. Defendant was shown to be a member of the Legislature and it was also shown that a certain bill, there pending, was pending before a committee of which he was a member. The bill itself was introduced into evidence and its general purport was discussed by Harris in the course of his testimony. The jury, therefore, knew of the general nature and object of the proposed legislation. They were told by this instruction, that defendant was required to give this bill his impartial consideration and judgment. They could· have believed, from Harris' testimony, that the bill was meritorious and deserved defendant's affirmative support and that, by his conduct, he had not only failed to give it his support but had completely failed to consider it, or that he had failed to consider it from a fair and impartial standpoint. The instruction, as worded, is calculated to have some such effect on the mind of the jury. Certainly it is calculated to have had some effect on the mind of the jury, else it would not have been offered or given. [State v. Farmer, *supra.*] Unless it had such an effect as is above suggested then the inquiring mind is unable to perceive what effect it could have had. It dealt with a subject wholly unrelated to the clear cut issue made by the conflict of evidence, and its proponents say that it is anchored on a provision of the constitution which, they further say, has no application to the crime of soliciting a bribe but which denounces an entirely different crime requiring essentially different proof for conviction; which contention we sustain.

230

If the instructions had their calculated, and their only logical, effect on the mind of the jury, or if it cannot be said that they did not have an effect, then the giving of said instructions was prejudicially harmful and the judgment should be reversed. [State v. Fleetwood, 143 Mo. App. 698, 1. c. 701, 702; State v. Rozell, 225 S. W. 931, 1. c. 934; State v. Welch, 278 S. W. 755, 1. c. 759; State v. Brown, 193 S. W. 902.] We think that they could have had such an effect.

The erroneous instructions in this case may not be excused on the grounds that the State assumed a greater burden than it was required to assume. They are condemned because they may have, and probably did, tend to prejudice the jury to defendant's harm. In the course of an opinion wherein the propriety of giving certain instructions was ruled, in Ford v. Gray, 131 Mo. App. 240, 1. c. 245, Broaddus, P. J., speaking for this court, said: "It is argumentative all the way through. And the argument is good and forcible. But for that very reason it was erroneous. · . . . All authorities condemn such instructions. . . . But plaintiffs obtained the advantage by arguments and comments, which were calculated to unduly influence the jury in their favor."

Defendant contends that it was error to give Instruction S-2 and urges several grounds in support of its contention. In view of our ruling on instructions S-1 and S-3, *supra*, it is unnecessary to determine whether or not Instruction S-2, "by itself, is sufficiently prejudicial as to constitute reversible error." [Lewis v. Kansas City Public Service Company, 17 S. W. (2d) 359, 1. c. 362.]

It is erroneous if for no other reason than that it broadens the issues made by the indictment. The charge contained in the indictment is specific, i. e., the unlawful solicitation of a suit of clothes as a bribe, whereas this instruction refers to "money or gift." It appears in the record that there was testimony offered and received which tended to prove that defendant asked money as a bribe. This testimony was objected to as not being in support of the charge laid and thereupon the prosecuting attorney stated that it was being offered only to prove intent. Under this instruction the jury could have considered such testimony as being in support of the specific charge laid.

Complaint is made because of alleged improper argument of counsel for the State. Since the case must be again tried it is not necessary to pass on this question. The judgment should be reversed and the cause remanded. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court.

The judgment is reversed and the cause remanded. *Bland* and *Cave, JJ.*, concur; *Shain, P. J.*, not sitting.