STATE of Missouri, Respondent,

v.

Joe PRESENT, Appellant.

No. 48237.

Supreme Court of Missouri,

Division No. 2.

Feb. 13, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied March 13, 1961.

Morris A. Shenker and Frank B. Green, Jr., St. Louis, for appellant.

John M. Dalton, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., A. Moody Mansur, Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was convicted by a jury of stealing personal property of a value exceeding $50. The trial court, acting in its discretion under Rule 27.04, V.A.M.R., and Section 546.430, RSMo 1949, V.A.M.S.,

reduced the punishment from six years' confinement, as assessed by the jury, to four years. Defendant was represented by counsel of his own choice, both at the trial and here. Since the only points briefed concern an instruction, a rather summary review of the evidence will suffice.

From the evidence the jury could reasonably have found the following facts. Defendant lived in the City of St. Louis, and he was in the business of buying and selling scrap iron and junk; he owned a 1950 Chevrolet truck. He was a diabetic and took insulin shots more or less regularly; these were usually administered by his sister; for several months one Albert Knicker had helped defendant in his business, driving his truck and doing the heavy work while defendant went along; they split the profits of the venture. On March 2, 1959, these two left St. Louis early in the morning and arrived in Wellsville, Missouri, around 4:00 p. m., after looking for junk around the countryside. Knicker there spied thirteen brass bearings or "journal brass" lying outside a door at one end of the Wabash Railroad station, and he called defendant's attention to these articles. They then drove on to another place in Wellsville where Knicker interviewed a man about junk, after which they returned to the station. Knicker backed the truck up to the platform, got out, and proceeded to throw this brass on the truck, putting it in a 55-gallon drum. Defendant left that immediate spot, apparently when the truck stopped, walked to another part of the station and peered in a window. When defendant came back, the brass had been loaded in the truck, he got in, and Knicker drove off, taking Highway 40 toward St. Louis. The loading of this brass had been observed by a man who notified the Wabash car inspector, who, in turn, notified authorities. Defendant and Knicker were intercepted on Highway 40 by a highway patrolman, who questioned them; Knicker, the driver, denied having any brass, and denied having been in Wellsville; defendant remained silent. The brass was found by the patrolman and both were arrested. Defendant signed a written statement containing the essential facts of the loading of the brass into the truck and taking it away. The value of each of the 13 new journals or bearings was shown to be at least $7.

Defendant's evidence was, in substance: that he had not had an insulin shot for two or three days and that he was nervous and somewhat dizzy; that when Knicker pointed out this journal brass he, defendant, insisted that he wanted no part of it, and that later he took no part in the loading, stating that "I'd sooner you let it alone"; that he was nervous and excited when Knicker insisted on taking the brass, and that he ran to the other end of the station and looked in a window with the intention of letting "somebody know about it," but that he saw no one; that Knicker was sore at him when he returned and said "I ought to punch you," but that he, defendant, got back in the truck and rode off because he had no other way to get home. He denied looking in the window for the purpose of "spying." Defendant's diabetic condition and his need for insulin was confirmed by a doctor practicing in Montgomery City to whom the sheriff took defendant after his arrest. Defendant had been convicted of grand larceny in 1954, sentenced to three years' imprisonment and paroled, apparently without serving any part of the sentence. The trial court did not consider this, technically, as a prior conviction under Section 556.280, RSMo 1949, V.A.M.S., as it existed prior to the 1959 amendment. Defendant denied any intention of stealing the brass and any intention of sharing in the profit from its sale.

Instruction S–1, of which defendant complains, was as follows:

> "If you find and believe from the evidence beyond a reasonable doubt that the defendant, on or about the 2nd day of March, 1959, at the County of Montgomery, State of Missouri, acting alone or in concert with another, did then and there intentionally, unlawfully

and feloniously steal Thirteen railroad journal brass of a reasonable value of at least $50.00 and being the personal property of the Wabash Railroad Company, if you so find, then you will find the Defendant guilty of stealing as charged, and assess his punishment by imprisonment in the penitentiary for not more than ten years nor less than two years, or by imprisonment in the county jail for not more than one year, or by a fine of not more than $1,000.00, or by both such fine and imprisonment.

" 'Stealing' as used in these instructions means to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property.

"You are further instructed that in order to find the defendant guilty, it is not necessary for the defendant to have actually loaded the journal brass; but if you find and believe from the evidence beyond a reasonable doubt that the defendant was then and there present and did in any way help, aid, and assist in the perpetration of the theft as charged in the information, then you should find him guilty as charged."

The points raised here are: (1) that this instruction assumed "that defendant's presence at the scene * * * was voluntary and for a criminal purpose" and that it thereby eliminated his theory of innocence; and (2), that the part which directed a verdict of guilty if defendant "was then and there present and did in any way help, aid, and assist * * *" was an improper comment on the evidence, was an abstract statement of law, and left the jury to speculate as to what act or acts might properly constitute the necessary help, aid and assistance.

■ The State insists that the points briefed here by defendant were not raised with sufficient definiteness and particularity in the motion for new trial, and that they may not be considered now. Rules 27.20, 28.02; State v. Butler, Mo., 310 S.W.2d 952. Four assignments of the motion were directed at this instruction; at least two of these were directed at the third paragraph, which is attacked by defendant here. While the points now made differ in some particulars from the assignments, we have determined that they are within the scope of the motion; also, we hold that the assignments, though lacking particularity in some degree, should not be held totally deficient. We thus pass to the merits.

■■ Defendant here directs his complaints at the last paragraph of Instruction S-1; in fact, his counsel argued orally that this paragraph was, in effect, a separate (and erroneous) instruction. We may not construe the instruction in that manner. All parts of it must be considered, and although a single paragraph might be misleading alone, if the instruction correctly states the law when examined as a whole, there can be no meritorious complaint. State v. Brown, Mo., 332 S.W.2d 904, 910; State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, 430. The first paragraph of this instruction required a finding, beyond a reasonable doubt, that defendant did, acting alone or in concert with another, "then and there *intentionally, unlawfully and feloniously* steal" the brass in question; the second paragraph defined "stealing" in the words of § 560.156 (1957 Cum.Supp. V.A.M.S.); the last paragraph contained nothing which eliminated any of the preceding requirements or any elements of the State's case; it merely elaborated upon the concert of action theory by instructing (again emphasizing the necessity of a finding beyond a reasonable doubt) that if defendant was present and "did in any way help, aid and assist" in the theft, he should be found guilty. There can be no doubt whatever that one who aids and assists in the perpetration of a felony is guilty of the commission of that felony. State v. Whitaker, Mo., 275 S.W.2d 316,

320; State v. Sheard, Mo., 276 S.W.2d 191, 194; State v. Butler, Mo., 310 S.W.2d 952, 957. Defendant does not take issue on this proposition.

The instruction did not assume a voluntary participation in the crime; it did not even assume that defendant's presence was voluntary, in itself. Defendant had admitted that he was present. When we read the whole instruction we see that the jury was thus required to find that defendant *helped, aided and assisted* (an *active,* as contrasted with a passive act or status) and that he did so *"intentionally,* unlawfully and feloniously." That requirement would not permit of any assumption or finding that he might be convicted by reason of a mere involuntary presence or without a "criminal purpose." Defendant was not, by this instruction, deprived of his defense. If he wished to have it submitted affirmatively, he should have requested an instruction on it. He did not do so. The jury had heard the State's evidence; it had heard defendant's own evidence, with the narrative of his refusal to participate in the theft and of his supposed attempt to find someone to report it to. It also heard his admission that he got back in the truck and proceeded toward home after the brass was loaded. The jury could not fail to see that the only real question for decision was whether defendant *did participate* in this theft, voluntarily and with a criminal purpose, or whether he actually disclaimed it, took no part in it, and tried to avoid all connection with it. A decision of that question was not foreclosed. The elements of voluntariness and criminal purpose, if omitted in the third paragraph, were fully and adequately covered elsewhere in the same instruction. In State v. Ruffin, Mo., 286 S.W.2d 743, 748, it was held that the requirement of knowledge in connection with "aiding, assisting or encouraging," might properly be supplied by the inclusion of such a requirement in another instruction. If that be true, certainly the point made against this instruction is without substantial merit.

Defendant next complains that this last paragraph was an abstract statement of the law and thus improper. State v. Byrnes, 238 Mo.App. 220, 177 S.W.2d 909; State v. Meininger, 306 Mo. 675, 268 S.W. 71. Actually, it was merely explanatory of the principal and preceding submission, and it is hardly to be classified, standing alone, as an abstract instruction. Even if it were, abstract instructions do not necessarily constitute reversible error. In State v. Brown, Mo., 332 S.W.2d 904, the court said, loc. cit. 910:

> "Much depends upon the particular type of the abstract instruction and upon the particular facts of the case. See State v. Byrnes, 238 Mo.App. 220, 177 S.W.2d 909, 911, where the giving of such an instruction was held to be error. We have a very different situation here, both as to the facts and the form of the instruction.
>
> " 'An instruction must be considered in its entirety and if the entire instruction when judicially examined correctly presents the law, an assignment as to an isolated paragraph, which considered alone might be misleading, must fail.' State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, 430 (8–10)."

In State v. Russell, Mo., 324 S.W.2d 727, 732, the court declined to hold an instruction erroneous which, as the court said, "merely defines in abstract terms how one may or may not become * * * amenable to punishment * * * as an aider or abettor." And see: State v. Reece, Mo., 324 S.W.2d 656; State v. Rozell, Mo., 279 S.W. 705, 709; State v. Washington, Mo., 335 S.W.2d 23, 25–26; State v. Mayberry, Mo., 272 S.W.2d 236, 243. This contention is without merit.

The words "did *in any way* help, aid, and assist" are complained of. Counsel state that the court should have specified *what* aiding and helping would have been

sufficient, but that, by the use of this "indiscriminate" term, it left the jury to speculate and consider any remote type of help and even to supply its own ideas. We have already seen that the jury was required to find a voluntary, criminal participation by the defendant; the requirement of helping, aiding and assisting necessarily implied some affirmative act, as contrasted with a mere passive presence. Counsel say that the jury may conceivably have found that the mere ownership of the truck was sufficient; in such event, if the jury followed the instruction, it must further have found that defendant voluntarily and with a criminal purpose submitted his truck to this use. There was evidence of at least one act, namely, of going down the platform and looking in a window, which might reasonably have been construed as an affirmative act of participation. The words "in any way" really added little if anything to the rest of the submission. If the jury had simply been told that defendant was guilty if he "helped, aided and assisted" in the theft, the natural supposition would be that he was guilty if he did so in any way. In State v. Butler, Mo., 310 S.W.2d 952, 957, the court said: "Under the accessory statute is is necessary only that he in some manner have aided or abetted those committing the criminal act." It would be virtually impossible to hypothesize in an instruction every possible fact which might constitute a means of help or assistance, and a recital of some but not all of these would certainly be claimed to be objectionable.

We do not find that this instruction could reasonably have misled or confused the jury; nor do we find it objectionable as a comment on the evidence. Clearly, it did not constitute reversible error. We find no error respecting the sufficiency of the information, verdict, judgment and sentence. The judgment is affirmed.

All concur.